UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

ALLSTATE INSURANCE COMPANY,

    Plaintiff,

    v.

ELECTROLUX HOME PRODUCTS,

    Defendant.

No. 5:18-cv-00699

**O P I N I O N**
**Defendant's Motion to Dismiss or, in the Alternative, to Sever and Dismiss,**
**ECF No. 9 – Granted in part**

**Joseph F. Leeson, Jr.**                                                           **August 3, 2018**
**United States District Judge**

### I. Introduction

In this action, Plaintiff Allstate Insurance Company has filed suit against Defendant Electrolux Home Products, alleging that Electrolux manufactured defective clothes dryers that— in eighty-six separate instances occurring across twenty-one states— caught fire and caused losses to Allstate's insureds. Electrolux has filed a motion to dismiss the entire action for lack of personal jurisdiction pursuant to Rule 12(b)(2) or, in the alternative, to sever the eighty-six separate claims in this action and, after severance, dismiss a number of those claims for failure to satisfy the amount in controversy required for diversity actions. For the reasons set forth below, the Court grants the second request, severing each of Allstate's eighty-six claims and dismissing the sixty-four claims over which the Court lacks subject matter jurisdiction. Further, of the twenty-two claims that remain, the Court transfers the nineteen claims that have no relation to

the Eastern District of Pennsylvania to more appropriate districts, and the Court retains the three claims which originate from the Eastern District of Pennsylvania.

**II.     Background**

According to the Complaint, Allstate is an insurance company incorporated in Illinois, with its principal place of business in the same state. Compl. ¶ 1, ECF No. 1. Electrolux is a manufacturer of home appliances that is incorporated in Delaware, with its principal place of business in North Carolina. *Id.* ¶ 5-6. Allstate issued insurance policies to all of the persons listed in Appendix A of the Complaint. *Id.* ¶ 2. Electrolux is the designer, manufacturer, distributor, and retailer of the ball-hitch style clothes dryers that allegedly caused fires in each of the eighty-six instances listed in Appendix A. *Id.* ¶ 12. As a result of these fires, the insureds suffered losses for which they were indemnified by Allstate. *Id.* ¶ 3. Electrolux's ball-hitch dryers are allegedly defective because they cause lint to accumulate and ignite behind the drum during normal use and because they use plastic, combustible internal components that allowed the fires to spread. *Id.* ¶ 13.

Allstate asserts two claims in this action. The first is a products liability claim in which Allstate asserts that Electrolux is strictly liable for the damage caused by the alleged defective and unreasonably dangerous conditions created by the dryers. *Id.* ¶¶ 33-45. The second is a negligence claim in which Allstate alleges that Electrolux breached its duty by negligently, carelessly, and recklessly manufacturing the dryers, and that this breach was the legal and proximate cause of the damage to the properties in question. *Id.* ¶¶ 46-51.

In response to Allstate's Complaint, Electrolux filed the present motion, seeking to dismiss this action for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) or, in the alternative, to sever the claims pursuant to Federal Rule of Civil Procedure 21

and to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) those newly-severed claims which fail to meet the amount in controversy requirement. *Id.*

### III. Standard of Review – Rule 12(b)(2)

The Rule 12(b)(2) motion to dismiss standard is as follows:

> When reviewing a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), [the court] must accept the plaintiff's allegations as true and resolve disputed facts in favor of the plaintiff. *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002). However, once a defendant has raised a jurisdictional defense, the plaintiff must "prove by affidavits or other competent evidence that jurisdiction is proper." *See Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009). If an evidentiary hearing is not held, a plaintiff "need only establish a prima facie case of personal jurisdiction." *Id.* A plaintiff meets this burden by "establishing with reasonable particularity sufficient contacts between the defendant and the forum state." *Provident Nat. Bank v. California Fed. Sav. & Loan Assoc.*, 819 F.2d 434 (3d Cir. 1987).

*Campbell v. Fast Retailing USA, Inc.*, No. CV 14-6752, 2015 WL 9302847, at *2 (E.D. Pa. Dec. 22, 2015).

A federal district court is permitted to exercise "personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of the state." *Arch v. Am. Tobacco Co.*, 984 F. Supp. 830, 834 (E.D. Pa. 1997) (quoting *Provident Nat. Bank v. California Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 436 (3d Cir. 1987)). Under Pennsylvania law, a court may exercise personal jurisdiction to the fullest extent allowed by the United States Constitution. 42 Pa. Cons. Stat. Ann. §§ 5308, 5322(b). Thus, the statutory personal jurisdiction analysis is incorporated into the overarching question of "whether the court's assertion of jurisdiction complies with the constitutional requirement of due process as articulated in the personal jurisdiction context." *Arch*, 984 F. Supp. at 835 (citing *Clark v. Matsushita Elec. Indus. Co.*, 811 F. Supp. 1061, 1064 (M.D. Pa. 1993)). A nonresident defendant may be subject to jurisdiction in

Pennsylvania under either general or specific personal jurisdiction. *Brooks v. Bacardi Rum Corp.*, 943 F. Supp. 559, 561 (E.D. Pa. 1996). General jurisdiction allows suits to be brought against a non-resident corporation on causes of action arising from dealings distinct from its activities within the forum. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). For a corporation, the "paradigm forum for the exercise of general jurisdiction is . . . one in which the corporation is fairly regarded as at home." *Id.* Specific jurisdiction, on the other hand, exists when the defendant has "purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

## IV. Analysis

### A. This Court has jurisdiction over Electrolux.

In its Complaint, Allstate alleges that this Court has general jurisdiction over Electrolux because Electrolux "purposefully availed itself of the benefit of the laws of this judicial district by regularly transacting and/or conducting business in the territorial jurisdiction of this United States District Court, which is located in the Commonwealth of Pennsylvania." Compl. ¶ 9. Electrolux contends that this allegation is insufficient to establish general jurisdiction over it because Electrolux is incorporated in a state other than Pennsylvania (Delaware), has its principal place of business in a state other than Pennsylvania (North Carolina), and does not have contacts with Pennsylvania that are so "continuous and systematic" as to render it essentially at home in the state. Further, although Electrolux concedes that it is registered to do business in Pennsylvania, it contends that such registration is insufficient to establish general jurisdiction under the United States Supreme Court's decision in *Daimler AG v. Bauman*, 571 U.S. 117

(2014), which held that "the exercise of general jurisdiction in every State in which a corporation 'engages in a substantial, continuous, and systematic course of business' . . . is unacceptably grasping," *id.* at 138.

Allstate responds that under Pennsylvania's long-arm statute—42 Pa. Cons. Stat. § 5301—Electrolux consented to jurisdiction when it registered to do business in Pennsylvania, a result, Allstate contends, that is supported by the Court of Appeals for the Third Circuit's decision in *Bane v. Netlink, Inc.*, 925 F.2d 637 (3d Cir. 1991). In reply to this argument, Electrolux contends that *Bane* is "no longer good law" in light of the Supreme Court's decision in *Daimler* and other recent precedent because *Bane* "rested on a reasonableness inquiry that the Supreme Court has since clarified does not apply in the general jurisdiction context." Def.'s Reply Br. 4, ECF No. 11.

In pertinent part, Pennsylvania's long-arm statute reads as follows:

**a) General rule.**--The existence of any of the following relationships between a person and this Commonwealth shall constitute a sufficient basis of jurisdiction to enable the tribunals of this Commonwealth to exercise general personal jurisdiction over such person, or his personal representative in the case of an individual, and to enable such tribunals to render personal orders against such person or representative:

. . . .

   (2) Corporations.--

      (i) Incorporation under or qualification as a foreign corporation under the laws of this Commonwealth.

      (ii) Consent, to the extent authorized by the consent.

      (iii) The carrying on of a continuous and systematic part of its general business within this Commonwealth.

42 Pa. Cons. Stat. § 5301.

In *Bane* the Third Circuit held that, by means of this statute, "Pennsylvania law explicitly states that the qualification of a foreign corporation to do business is sufficient contact to serve as the basis for the assertion of personal jurisdiction." 925 F.2d at 640. Declining to address the "continuous and systematic" nature of the defendant's contacts with Pennsylvania, the court stated that "such registration [to do business] by a foreign corporation carries with it consent to be sued in Pennsylvania courts." *Id.* The defendant business had, by means of its registration, "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

As indicated above, Electrolux contends that the Third Circuit's decision in *Bane* was overruled by recent U.S. Supreme Court precedent, including the Court's 2014 decision in *Daimler*. In that case, the defendant, a German company, was haled into court in California by Argentinian workers who were asserting claims under Argentina and California laws. 571 U.S. at 121. The Ninth Circuit Court of Appeals held that personal jurisdiction over Daimler was properly exercised on the basis of Mercedes-Benz USA's contacts with the state of California. *Id.* at 124-25.[1] Reversing that decision, the Supreme Court reiterated its 2011 holding in *Goodyear Dunlop Tires Operations, S.A. v. Brown* that foreign (sister-state or foreign-country) corporations are amenable to general jurisdiction where their contacts are so "'continuous and systematic' as to render them essentially at home in the forum State." *Id.* at 127 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 563 U.S. 915, 919 (2011)). The Court observed that the two most common places for a business to be at home are (1) the place of incorporation and (2) the principal place of business. *Id.* at 137 (stating that while these are

---

[1] Mercedes-Benz USA is a subsidiary of Daimler.

"paradigm" bases for general jurisdiction, others may exist). The Court determined that Daimler was not "at home" in California such that it would be amenable to general jurisdiction there. *Id.* at 139.

The Court in *Daimler* did not directly address the matter of jurisdiction by consent. Rather, the Court's only mention of consent as a means of obtaining jurisdiction was in a passing reference to *Goodyear*. *See id.* at 129 (quoting *Goodyear*, 563 U.S. at 927-28). The reference, although brief, implies that the test adopted by *Goodyear* and applied by *Daimler* for analyzing general jurisdiction is to be applied in the *absence* of consent. *See id.* ("*Perkins v. Benguet Consol. Mining Co*[2] remains the textbook case of general jurisdiction appropriately exercised over a foreign corporation that has *not consented* to suit in the forum." (quoting *Goodyear*, 563 U.S. at 928) (emphasis added)).

In the wake of *Daimler*, federal district courts in Pennsylvania have consistently found that the Third Circuit's decision in *Bane* remains good law and that Pennsylvania's consent-by-registration statute remains a proper basis for personal jurisdiction. *See Gorton v. Air & Liquid Sys. Corp.*, 303 F. Supp. 3d 278, 298 (M.D. Pa. 2018) ("Courts within the Third Circuit that have analyzed section 5301 following *Daimler* continue to follow *Bane*.") (collecting cases). As the district court in *Bors v. Johnson & Johnson* found, "[c]onsent remains a valid form of establishing personal jurisdiction under the Pennsylvania registration statute after *Daimler*. The Supreme Court did not eliminate consent." 208 F. Supp. 3d 648, 655 (E.D. Pa. 2016).[3]

---

2     *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952).
3     Electrolux points out that the *Bane* opinion addressed, among other things, a since-repealed Pennsylvania statute requiring that a foreign corporation seeking a certificate of authority to do business in the Commonwealth must have agreed to designate the Secretary of the Commonwealth as an agent for service of process. But Electrolux does not explain how or why the repeal of this statute undermines *Bane's* analysis of Pennsylvania's long-arm statute, 42 Pa. Cons. Stat. § 5301, which is unchanged since *Bane*.

Other federal courts within this Circuit have largely agreed that registration statutes continue to be a valid basis for general jurisdiction after *Daimler*. *See Otsuka Pharm. Co. v. Mylan, Inc.*, 106 F. Supp. 3d 456, 467 (D.N.J. 2015) ("[C]onsent, whether by registration or otherwise, remains a valid basis for personal jurisdiction following . . . *Daimler*."); *Acorda Therapeutics, Inc. v. Mylan Pharm., Inc.*, 78 F. Supp. 3d 572, 584 (D. Del. 2015), *aff'd* 817 F.3d 775 (3d Cir. 2016), *cert. denied* 137 S. Ct. 625 (2017) ("One manner in which a corporation may be deemed to have consented to the jurisdiction of the courts in a particular state is by complying with the requirements imposed by that state for registering or qualifying to do business there."); *but see AstraZeneca AB v. Mylan Pharm., Inc.* 72 F. Supp. 3d 549, 556 (D. Del. 2014) (finding that a party's compliance with Delaware's registration statutes "cannot constitute consent to jurisdiction" because "[f]inding mere compliance with such statutes sufficient to satisfy jurisdiction would expose companies with a national presence . . . to suit all over the country, a result specifically at odds with *Daimler*").[4]

This Court is persuaded by the reasoning of those courts that have found that the Supreme Court in *Daimler* did not mean "*sub silentio*, to eliminate consent as a basis for jurisdiction." *See Acorda*, 78 F. Supp. 3d at 591. Accordingly, there is no reason to believe that *Daimler* overruled the Third Circuit's holding in *Bane* that, under Pennsylvania's long-arm

---

[4]     The court in *AstraZeneca* was concerned that consent statutes would prevent companies from being able to predict where they may be sued. *See AstraZeneca AB*, 72 F. Supp. 3d at 556. But the court in *Acorda* determined that this concern was unfounded. *See Acorda*, 78 F. Supp. 3d at 591. While the concern may exist where the "at home" test is applied and contacts must be weighed, a corporation that has knowingly registered to do business in a state has "no uncertainty as to the jurisdictional consequences of its actions," given the statutorily provided terms that accompany its registration. *Id.*

statute, "registration by a foreign corporation carries with it consent to be sued in Pennsylvania courts." *See Bane*, 925 F.2d at 640.[5]

In addition to its argument based on *Daimler*, Electrolux argues that the federal courts have misinterpreted Pennsylvania's long-arm statute. According to Electrolux, to say that it "consented" to jurisdiction by registering as a foreign corporation is to conflate § 5301(a)(2)(i) with § 5301(a)(2)(ii). This argument is unfounded. As set forth above, 42 Pa. Cons. Stat. § 5301(a) enumerates the various "relationships" by which general jurisdiction may be obtained over a defendant in Pennsylvania. Each relationship listed under § 5301(a) represents a distinct manner in which general jurisdiction may be obtained. *See id.* ("The existence of any of the following relationships between a person and this Commonwealth shall constitute a sufficient basis of jurisdiction to enable the tribunals of this Commonwealth to exercise general personal jurisdiction over such person . . . ."). Section 5301(a)(2)(i) lists "qualification as a foreign corporation under the law of this Commonwealth" as a basis for general jurisdiction. This is commonly referred to as the consent-by-registration statute. The following subsection, § 5301(a)(2)(ii), lists "consent, to the extent authorized by the consent" as a basis for general jurisdiction. This subsection may be implicated, for example, in the context of a forum-selection clause consenting to Pennsylvania's jurisdiction. But regardless of whether registration is understood as implicating only § 5301(a)(2)(i), or as implicating both that subsection and

---

[5] Electrolux raises the concern that allowing the consent-by-registration basis of jurisdiction to stand will subject it to personal jurisdiction for "*every claim* . . . in *every state* in which it is registered." *See* Def.'s Br. Supp. Mot. 7, ECF No. 9-1. But as the district court in *Acorda* observed, this result, even if it is "odd," is "entirely permissible" under *Daimler*. *See Acorda*, 78 F. Supp. 3d at 591. Moreover, as a practical matter, Electrolux's concern is unfounded. While all fifty states maintain some form of business registration statute, it appears that only a fraction of those states purport to confer general jurisdiction on registrants by means of those statutes. *See* Kevin D. Benish, Note, *Pennoyer's Ghost: Consent, Registration Statutes, and General Jurisdiction* After Daimler AG v. Bauman, 90 N.Y.U. L. Rev. 1609, 1647 (2015).

§ 5301(a)(2)(ii),[6] it is clear that Pennsylvania's statute expressly provides notice that a corporation's registration to do business in Pennsylvania subjects that corporation to the State's general jurisdiction, such that a corporation's "compliance with Pennsylvania's registration statute amount[s] to consent to personal jurisdiction." *See Bors*, 208 F. Supp. 3d at 655. Accordingly, Electrolux satisfied the prerequisite in § 5301(a)(2)(i) when it registered to do business in Pennsylvania and, in so doing, purposefully availed itself of the protections and benefits of the laws of this forum and subjected itself to the Pennsylvania courts' jurisdiction.[7]

**B.     Severance of Allstate's claims under Rule 21 is warranted because the claims arise under the laws of twenty-one different states.**

Federal Rule of Civil Procedure 21 provides in relevant part that "[t]he court may . . . sever any claim against a party." Fed. R. Civ. P. 21. A case with multiple claims may be severed under Rule 21 where doing so would advance the goals of the "convenience of the parties, avoidance of prejudice to either party, and promotion of the expeditious resolution of the litigation." *Official Comm. of Unsecured Creditors v. Shapiro*, 190 F.R.D. 352, 355 (E.D. Pa. 2000) (citing *German v. Fed. Home Loan Mortg. Corp.*, 896 F. Supp. 1385, 1400 n.6 (2d Cir. 1995)). Specific factors that may be considered include (1) whether the issues are "significantly

---

[6]     In *Bane*, the court determined that the defendant corporation's authorization to do business in Pennsylvania subjected it to "the exercise of personal jurisdiction by Pennsylvania courts under section 5301(a)(2)(i) *or* (ii)." 925 F.2d at 641 (emphasis added).

[7]     Electrolux's reliance on the recently-decided Court of Common Pleas case of *Mallory v. Norfolk Southern Railway Co.*, No. 1961 802 EDA 2018 (Pa. Ct. Com. Pl. May 30, 2018), does not change the analysis. *See* Def.'s Notice Suppl. Authority, ECF No. 15. In *Mallory*, the court held that "[b]y wrapping general jurisdiction in the cloak of consent, Pennsylvania's mandated corporate registration attempts to do exactly what the United States Supreme Court prohibited" in *Daimler* and other cases. *Id.*, slip op. at 14. But for the reasons set forth above, this Court finds that *Daimler* did not, in fact, invalidate consent-by-registration as a means of imposing jurisdiction. *See Webb-Benjamin, LLC v. Int'l Rug Grp.*, LLC, 2018 PA Super 187, 2018 WL 3153602 (Pa. Super. Ct. June 28, 2018) ("Guided by the reasoning in *Bors* and *Gorton*, we conclude that *Daimler* does not eliminate consent as a method of obtaining personal jurisdiction.").

different from one another," (2) whether each claim requires "testimony of different witnesses and different documentary proof," (3) whether the party opposing the motion "will be prejudiced if it is granted," and (4) whether the party requesting the motion "will be prejudiced if it is not granted." *Id.* "The Federal Rules of Civil Procedure give district courts broad discretion in deciding whether to sever a case." *Mulgrew v. Gov't Emps. Ins. Co.*, No. 3:16-CV-02217, 2017 WL 4540612, at *1 (M.D. Pa. Oct. 11, 2017). "The party seeking severance bears the burden under Rule 21." *Id.*

As Electrolux points out, Allstate's claims arise out of twenty-one different states and, accordingly, would potentially involve the application of the laws of each of those twenty-one states on complex doctrines such as products liability and negligence.[8] For this reason, allowing these eighty-six claims to continue as a single action would not facilitate judicial economy, nor would it facilitate justice. In particular, attempting to charge a jury on the substantive laws of twenty-one states and requiring the jury to compartmentalize the evidence and substantive law as it pertains to each of the eighty-six claims is nothing short of an insurmountable task. As a court in the Eastern District of Missouri observed, in dealing with the substantive laws of only four different states, the court could imagine that "four separate trials would be necessary, not only because the plaintiffs' claims would be individualized, but because four sets of jury instructions would be required to encompass the laws from four different states. Very little economy, if any at all, would be realized should these plaintiffs' claims remain joined." *Boschert v. Pfizer, Inc.*,

---

[8] *See Matter of Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1301 (7th Cir. 1995) ("The law of negligence, including subsidiary concepts such as duty of care, foreseeability, and proximate cause, may as the plaintiffs have argued forcefully to us differ among the states only in nuance . . . . But nuance can be important, and its significance is suggested by a comparison of differing state pattern instructions on negligence and differing judicial formulations of the meaning of negligence and the subordinate concepts. . . . The voices of the quasi-sovereigns that are the states of the United States sing negligence with a different pitch.").

11
080318
Case 6:19-cv-02030-KEM   Document 16   Filed 08/03/18   Page 11 of 17

No. 4:08-CV-1714 CAS, 2009 WL 1383183, at *4 (E.D. Mo. May 14, 2009).[9] Accordingly, given the substantial inefficiencies and difficulties that would result from maintaining the claims in this case as a single action, the Court severs all eighty-six claims into separate suits.[10]

C. **Following severance, this Court does not have subject matter jurisdiction over sixty-four claims that fail to meet the amount in controversy required for diversity jurisdiction and must dismiss those claims.**

Severance "essentially creates a separate case." *Graudins v. Retro Fitness*, LLC, 921 F. Supp. 2d 456, 468 (E.D. Pa. 2013) (citing *Shapiro*, 190 F.R.D. at 354-55). Accordingly, following severance, a court must determine that each severed action has "an independent jurisdictional basis." *See Honeywell Int'l, Inc. v. Phillips Petroleum Co.*, 415 F.3d 429, 432 (5th Cir. 2005). Here, the Complaint alleges that this Court has diversity subject matter jurisdiction over the claims. After severance, sixty-four of Allstate's eighty-six claims fail to meet the required amount in controversy by claiming less than $75,000 in relief sought. *See* Compl. App.

---

[9] Allstate asserts that any "confusion . . . can be remedied by a carefully crafted jury instruction." Pl.'s Opp'n Mem. 20 (citing *Oram v. SoulCycle, LLC*, 979 F. Supp. 2d 498, 504 (S.D.N.Y.)). But in *Oram*, the court was dealing with only two separate states: California and New York. *Oram*, 979 F. Supp. 2d. at 504. Allstate also contends that this problem could be remedied by separate trials. But holding twenty-one separate trials in this Court, involving the substantive law of distant jurisdictions, would not promote judicial economy.

[10] In addition to its argument that severance is warranted because Allstate's claims arise under the laws of twenty-one different states, Electrolux further argues that severance is warranted because of the factual distinctions among Allstate's claims. Specifically, Electrolux argues that Allstate's claims differ with respect to the dryer models involved, the circumstances surrounding the installation and use of the dryers, and other various extrinsic factors that contributed to the fires. But despite the factual distinctions alleged by Electrolux, all of the claims brought by Allstate involve the same manufacturer and the same type of dryer (i.e., "ball-hitch style" dryers), and Allstate has alleged that it was the common defects of lint accumulation, proximity to the heat source, and easily combustible plastic parts that led to the damage in each individual case. This suggests that the factual distinctions, by themselves, would not warrant severance. *See State Farm Fire & Cas. Co. v. MTD Prod. LLC*, No. 16-cv-02242, 2016 WL 3538613, at *2 (E.D. Pa. June 28, 2016) (declining to sever claims against the manufacturer of a lawn mower, even where the models and component parts differed between claims, where the plaintiff alleged that all of the injuries arose from "related exhaust system malfunctions," such that it had alleged a common cause that was not "so significantly different" from claim to claim).

A.[11] The Court therefore dismisses those sixty-four claims without prejudice. *See Gallo v. Wash. County*, No. 08cv0504, 2009 WL 274500, at *10 n.8 (W.D. Pa. 2009) (finding that where an original complaint was not filed in state court, "the [c]ourt cannot remand [the] case. Rather, the [c]ourt will dismiss . . . without prejudice for an action to be filed in state court.").

**D.      The Court transfers nineteen of the remaining claims to more appropriate districts.**

Because the applicable venue analysis has changed markedly as a result of the Court's severance of Allstate's claims, it is appropriate to address this issue in the interest of justice. Under the general venue statute, a civil action may be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(a). At the outset, it is clear that, following severance, nineteen of the remaining twenty-two claims do not meet the venue requirements of 28 U.S.C. § 1391(a). Neither Allstate nor Electrolux resides in Pennsylvania. Only three of the remaining twenty-two claims originate out of fires that occurred in the Eastern District of Pennsylvania, and those three claims are the only claims that pertain to property that is situated in this district.[12] The other nineteen claims have no discernable connection to this district. Nevertheless, Electrolux has not moved to dismiss or transfer these nineteen claims for improper venue under Federal Rule of Civil

---

[11]     Electrolux moves to dismiss only sixty-three of Allstate's claims for failure to meet the amount in controversy—but it fails to identify precisely which claims it is seeking to dismiss. By the Court's count, sixty-four of the claims fail to meet the amount in controversy after severance. The remaining twenty-two claims are: "e, i, j, l, p, q, s, t, v, bb, ff, ii, kk, uu, ww, iii, uuu, www, xxx, zzz, bbbb," and "dddd."

[12]     Specifically, claims "www," "xxx," and "bbbb."

Procedure 12(b)(3), and it has therefore waived this defense under Rule 12(h). As a result, venue in this district is proper. *See Madrazo v. Welcome Hotel Grp., LLC*, No. CV 18-0427, 2018 WL 1942369, at *2 n.5 (E.D. Pa. Apr. 25, 2018) ("Defendants have waived improper venue, thereby making venue in this District proper.").

Where venue is proper, a court may sua sponte transfer an action to a different district "'[f]or the convenience of parties and witnesses, in the interest of justice'" under 28 U.S.C. § 1404(a). *Farley v. Cernak*, No. CV 15-5956, 2016 WL 162238, at *3 n.3 (E.D. Pa. Jan. 13, 2016) (quoting 28 U.S.C. § 1404(a)) (citing *Amica Ins. Co. v. Fogel*, 656 F.3d 167, 180 (3d Cir. 2011)); *see Keating Fibre Int'l, Inc. v. Weyerhaeuser Co.*, 416 F. Supp. 2d 1048, 1051 (E.D. Pa. 2006) ("Although no party has requested it, we may consider transfer of venue under § 1404(a) sua sponte.").[13]

A variety of considerations may be relevant to the decision of whether to transfer an action under § 1404(a), including the parties' preferences, where the claim arose, the convenience of the parties, the convenience of the witnesses and the location of the records (to the extent that either may be unavailable for trial in one of the fora under consideration), the enforceability of the judgment, practical considerations that could affect the ease of trial, the amount of congestion in the judicial calendars, and the local interest in resolving local controversies in the home forum. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879-80 (3d Cir. 1995). Ultimately, the question is "whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *See id.* at 879 (quoting 15 Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper,

---

[13] Although "[c]ourts often give parties an opportunity to brief the transfer issue before entry of the transfer order," they need not do so, depending on the circumstances of the case. *See Bank Express Int'l v. Kang*, 265 F. Supp. 2d 497, 508 (E.D. Pa. 2003).

Federal Practice and Procedure § 3847 (2d ed. 1986)). It must be remembered, however, that "the plaintiff's choice of venue should not be lightly disturbed." *Id.* (quoting 1A James Wm. Moore et al., *Moore's Federal Practice* ¶ 0.345[5], at 4350 (2d ed. 1995)).

    Here, the nineteen claims at issue involve dryer fires that occurred in the Central District of California, the Middle District of Florida, the Northern District of Georgia, the Southern District of Georgia, Northern District of Illinois, the Northern District of Iowa, the District of Maryland, the Eastern District of Michigan, the Eastern District of New York, the Middle District of Pennsylvania, the Western District of Pennsylvania, and the Western District of Virginia. As these cases involve dryer fires that occurred in residential homes, there is reason to believe that the witnesses of the fires and any property that was damaged as a result of the fires are located in the above-named districts. Moreover, as Electrolux has argued, and as discussed above, most of the above-listed claims (with the exception of the claims arising out of the Middle and Western Districts of Pennsylvania) would likely require the application of state laws other than Pennsylvania's. These factors strongly suggest that the litigation would proceed more efficiently in the above-listed districts. On the other hand, weighing the heaviest in this forum's favor is the fact that Allstate chose to bring its suit here, although the reasons for this choice are not apparent. But while a plaintiff's choice of forum is given due consideration, that choice "is deserving of less weight where none of the operative facts of the action occurred in the selected forum." *Gen. Fiber Commc'ns, Inc. v. Barnes Wentworth, Inc.*, No. 03-cv-3291, 2004 WL 1636980, at *2 (E.D. Pa. May 28, 2004) (quoting *Musser v. Consol. Rail Corp.*, No. 96-3388, 1996 WL 417352, at *2 (E.D. Pa. July 19, 1996)). On balance, the above-listed districts appear to be much more suitable venues for the nineteen claims at issue. Accordingly, the Court will transfer those nineteen claims to the districts in which the fires occurred.

The locations for the transfers are as follows:

1. Claim "e" is transferred to the Central District of California.
2. Claims "i" and "j" are transferred to the Middle District of Florida.
3. Claims "p, q, t," and "v" are transferred to the Northern District of Georgia.
4. Claims "l" and "s" are transferred to the Southern District of Georgia.
5. Claim "bb" is transferred to the Northern District of Illinois.
6. Claim "ff" is transferred to the Northern District of Iowa.
7. Claims "ii" and "kk" are transferred to the District of Maryland.
8. Claims "uu" and "ww" are transferred to the Eastern District of Michigan.
9. Claim "iii" is transferred to the Eastern District of New York.
10. Claim "uuu" is transferred to the Middle District of Pennsylvania.
11. Claim "zzz" is transferred to the Western District of Pennsylvania.
12. Claim "dddd" is transferred to the Western District of Virginia.

This Court retains jurisdiction over the three claims that involved fires occurring in the Eastern District of Pennsylvania,[14] and the Court directs counsel to file amended pleadings with respect to the three retained claims.[15]

## V. Conclusion

For the reasons set forth above, the Court denies Electrolux's 12(b)(2) motion to dismiss this action, but the Court grants Electrolux's motion to sever Allstate's eighty-six claims into separate actions and to dismiss sixty-four of those claims for failure to meet the amount in controversy required for a diversity action. Of the twenty-two remaining claims, the Court

---

[14] Specifically, claims "www," "xxx," and "bbbb."
[15] To the extent that Allstate wishes to join the three claims over which this Court has retained jurisdiction, Allstate should file its Motion to Join pursuant to Federal Rule of Civil Procedure 18 contemporaneously with the amended complaints that are required as a result of the severance.

transfers the nineteen claims that have no relation to the Eastern District of Pennsylvania to more appropriate districts, and the Court retains the three claims that originate from the Eastern District of Pennsylvania. A separate order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Court